UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA     :     **INFORMATION**

     - v. -                :     08 Cr.       (   )

MAHMOUD SOLIMAN,             :

     Defendant.             :

- - - - - - - - - - - - - - - x

**COUNT ONE**

(False Statement)

The United States Attorney charges:

Background

1. At all times relevant to this Information, the United States Agency for International Development ("USAID") was an agency of the United States of America that administered certain foreign economic assistance programs of the United States. Among other things, USAID administered a commodity import program in Egypt (the "CIP") that sought to promote economic development in the Egyptian private sector by providing financing to Egyptian companies to purchase commodities manufactured in the United States. Under the CIP, an Egyptian company could apply to USAID for an interest-free loan in United States dollars to purchase commodities made in the United States. Companies receiving financing were obligated to repay the loan in Egyptian pounds to the Egyptian government, which in turn used

the funds for development projects in Egypt, in consultation with USAID.

2. At all times relevant to this Information, the regulations applicable to commodity transactions financed by USAID required Egyptian companies that applied to the CIP for a USAID loan, among other things, to purchase U.S.-manufactured goods from U.S.-based suppliers. U.S.-based suppliers were required to submit a form, entitled "AID Form 11," to USAID verifying that the commodities purchased were made in the United States and that the supplier had its place of business in the United States. If USAID granted an application for CIP funding, USAID authorized the disbursement of the loan proceeds through various banks.

3. At all times relevant to this Information, MAHMOUD SOLIMAN, the defendant, was a managing director of the Saudi Egyptian Logistics and Electronics Company ("SALEC"), a telecommunications company with an office located in Cairo, Egypt.

4. At all times relevant to this Information, a co-conspirator not named herein ("CC-1"), was the President and Chief Executive Officer of LINKdotNET, an Internet company located in Cairo, Egypt.

<u>The False Application</u>

5.  On or about August 11, 2001, CC-1 knowingly submitted, on behalf of LINKdotNET, a false and fraudulent application to USAID seeking a loan for the future purchase of communications equipment. Included in the application was a sham bid, purportedly provided by a U.S.-based supplier named CyberCrossing. On or about December 11, 2001, USAID authorized financing of approximately $2,084,688 for the purchase of communications equipment by LINKdotNET from CyberCrossing.

6.  On or about January 15, 2002, a second co-conspirator not named herein ("CC-2"), purporting to be an officer of CyberCrossing, signed and submitted to USAID a pre-printed AID Form 11 certifying to USAID that the communications equipment involved in the purported sale was manufactured in the United States and that CyberCrossing had its place of business in the United States. The AID Form 11 specifically listed CC-2 as "VP USA" in typeface and was signed by CC-2. Attached to the form was a purported CyberCrossing invoice stating that the purported communications equipment was supplied at a cost of approximately $2,084,688. In truth and in fact, MAHMOUD SOLIMAN, the defendant, fabricated that invoice, and then transmitted it to CC-2 for submission to USAID.

7.  Rather than using USAID financing as described in

LINKdotNET's application to purchase equipment from CyberCrossing, CC-1 arranged to use USAID funds to repay an existing debt owed to SALEC, the company for which SOLIMAN worked, and to purchase communications equipment from SALEC. Specifically, CC-1 used the USAID funds: (1) to purchase approximately $828,093 worth of communications equipment from SALEC; (2) to pay off a debt of approximately $828,891 which LINKdotNET owed to SALEC from a previous transaction; and (3) to pay approximately $347,222 to SALEC as additional profit.

9. From on or about January 16, 2002 through on or about April 19, 2002, CC-1 and SOLIMAN caused several letters on CyberCrossing letterhead to be sent to the Bank of New York with instructions regarding the disbursement of USAID funds.

Statutory Allegation

10. On or about January 15, 2002, in the District of Columbia and elsewhere, MAHMOUD SOLIMAN, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, unlawfully, willfully, and knowingly, did make and use a false writing and document knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, SOLIMAN knowingly and willfully made a bogus invoice purportedly from CyberCrossing, and

4

knowingly and willfully caused such invoice to be submitted to USAID along with a form falsely certifying that CyberCrossing had sold communications equipment to LINKdotNET at a cost of approximately $2,084,688.

    (Title 18, United States Code, Sections 1001 and 2.)

 

*/s/ Michael J. Garcia*
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### MAHMOUD SOLIMAN,

**Defendant.**

## INFORMATION

08 Cr.   (  )

Title 18, United States Code, Sections 1001 and 2.

MICHAEL J. GARCIA
United States Attorney.